# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MITCHELL DARIN HAWK,** <br> **Plaintiff,** <br> v. <br> **NANCY A. BERRYHILL,**[1] **Acting Commissioner of Social Security,** <br> **Defendant.** | NO. CV 16-2821-KS <br><br> **MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

Mitchell Darin Hawk ("Plaintiff") filed a Complaint on April 25, 2016, seeking review of the denial of his application for a period of disability and disability insurance benefits ("DIB"). (Dkt. No. 1.) On May 18, 2016, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 12, 15.) On January 5, 2017, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No 23.) Plaintiff seeks an order reversing the Commissioner's decision and remanding for further

---

[1] The Court notes that Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Nancy A. Berryhill for Carolyn Colvin as the defendant in this action.

1

proceedings or an immediate award of benefits. (Joint Stip. at 18.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*See id.* at 18-19.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On October 30, 2012, Plaintiff, who was born on November 25, 1967, protectively filed an application for DIB.[2] (*See* Administrative Record ("AR") 9, 178.) Plaintiff alleged disability commencing February 6, 2012 due to "collapsed lung with pleural effusion [and] 3 fractured ribs; back injury; difficulty breathing – chest pain; anxiety; depression; head injury trauma; sleep apnea; diagnosed with pneumothorax; psychological issues; severe memory loss due to accident." (AR 204.) Plaintiff previously worked as a dump truck driver (DOT 902.683-010). (AR 23, 196.) After the Commissioner denied Plaintiff's application initially (AR 74) and on reconsideration (*id.* 89), Plaintiff requested a hearing (*see id.* 109). Administrative Law Judge Helen E. Hesse ("ALJ") held a hearing on December 9, 2014 (*id.* 30). Plaintiff, who was represented by counsel, testified before the ALJ as did vocational expert ("VE") Alan Boroskin. (*See* AR 33-54.) On January 14, 2015, the ALJ issued an unfavorable decision, denying Plaintiff's application for a period of disability and DIB. (*Id.* 9-24.) On March 24, 2016, the Appeals Council denied Plaintiff's request for review. (*Id.* 1-4.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017. (AR 11.) The ALJ found that Plaintiff had not

---

[2] Plaintiff was 44 years old on the application date and thus met the agency's definition of a younger individual. *See* 20 C.F.R. § 404.1563(c).

engaged in substantial gainful activity since his February 6, 2012 alleged onset date. (AR 11.) The ALJ further found that Plaintiff had the following severe impairments: muscle strain/sprain; alleged back pain; and mild obesity. (AR 12.) The ALJ found that Plaintiff's medically determinable mental impairments of anxiety disorder, posttraumatic stress disorder (PTSD), and organic brain syndrome, considered singly and in combination, were nonsevere. (AR 12.) The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (*Id.* 14.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following limitations:

> [Plaintiff] can lift and/or carry fifty pounds occasionally, twenty-five pounds frequently; . . . can sit, stand, or walk for six hours out [of] an eight-hour workday; . . . can occasionally climb ladders, ropes or scaffolds; . . . can frequently climb stairs, bend, balance, kneel, stoop crouch, and crawl.

(AR 15.)

The ALJ found that Plaintiff was able perform his past relevant work as a dump truck driver (DOT 902.683-010). (AR 23.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date through the date of the ALJ's decision. (*Id*. at 23-24.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence

is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

\\
\\
\\
\\

4

**DISCUSSION**

The sole issue in dispute is whether the ALJ properly considered the opinions of Plaintiff's treating orthopedist.

**I. <u>The ALJ's Evaluation Of The Records Of Plaintiff's Treating Physician</u>**

    **A. Treatment Records of Dr. Gibson**

Plaintiff contends that the ALJ improperly evaluated the opinion of Dr. Harry L. Gibson, M.D., Plaintiff's treating orthopedist. (Joint Stip. at 3-10.) The record reflects that Dr. Gibson treated Plaintiff in connection with his workers' compensation claim between February 2012 and February 2013. (AR 491-513.) At his first appointment with Dr. Gibson, Plaintiff reported that, on December 29, 2010, while operating a back hoe, he fell backwards and landed on some of the equipment on the ground. He immediately felt pain in his chest and was unconscious for a while. (AR 509, 510.) Plaintiff was transported to UCI Emergency Room in Orange, California, where they initially did not recognize that he had fractured his ribs and discharged him. (AR 510.) Plaintiff returned to the emergency room to report trouble breathing, at which point further studies were conducted and it was determined that Plaintiff had broken several ribs and had a considerable amount of blood and fluid in his chest space. (AR 510.) After taking some time off to heal, Plaintiff returned to "light duty" work in the office but continued to experience pain and shortness of breath that worsened over time. (AR 511.)

At that initial visit, Dr. Gibson had a film made of Plaintiff's thoracic spine, which showed that Plaintiff had two rib fractures that had not healed despite more than a year passing since the date of injury. (AR 512.) The film also revealed that Plaintiff's diaphragm was elevated on the right side. (AR 512.) X-rays of Plaintiff's thoracic spine showed four

discs that had developed a considerable amount of bone formation and the disc spaces looked like they were going to fuse spontaneously. (AR 512.) Finally, x-rays of Plaintiff's lumbar spine showed reverse spondylolisthesis L4 on L5, which explained Plaintiff's chronic back pain. (AR 512.) Dr. Gibson recommended a bone stimulator to try to get Plaintiff's ribs to heal and a visit to a chest medical specialist to address Plaintiff's lungs. (AR 512.) Dr. Gibson opined that Plaintiff was totally disabled and might need long-term disability if his chest medical problems did not resolve. (AR 513.) The following month, on March 21, 2012, Dr. Gibson stated that because "the patient tells me there is no light duty work, until we got some progress to see if the ribs would heal, I think it is appropriate that he be off work." (AR 508.)

In May 2012, Dr. Gibson stated that Plaintiff was "clinically short of breath." (AR 506.) In July 2012, Dr. Gibson observed that Plaintiff's fractured ribs still had not healed. (AR 501.) However, Plaintiff reported that physiotherapy was helping, and Dr. Gibson recommended that he continue. (AR 501.) At that time, Plaintiff's medications included two different strength dosages of Norco, a highly addictive combination of acetaminophen and hydrocodone, Vicodin, another highly addictive combination of acetaminophen and hydrocodone, and Zolpidem (to treat insomnia). (AR 501.) Dr. Gibson also advised that Plaintiff seek a pulmonary physician due to a thick pleural effusion and elevated diaphragm on his right side. (AR 504.)

In October 2012, nearly two years after Plaintiff's injury, Dr. Gibson observed that one rib had healed but the other had not. (AR 500.) Dr. Gibson recommended the continued use of the bone stimulator. (AR 500.) In January 2013, a full two years after Plaintiff's injury, Plaintiff reported that he was in constant pain and taking approximately 3-4 Norco a day to control the pain. (AR 494.) Dr. Gibson thought it would be helpful to refer Plaintiff to a chest surgeon and also to consider surgery on the ribs to obtain healing. (AR 494.) Finally, in February 2013, the date of the last treatment notes in the record, Dr. Gibson reported that

Plaintiff's condition remained "about the same" and indicated that one of Plaintiff's fractured ribs still had not healed. (AR 492.) Plaintiff's medications continued to include prescriptions for both strengths of Norco (7.5 mg hydrocodone/325 mg acetaminophen and 10 mg hydrocodone/325 acetaminophen), a prescription for Vicodin, and a prescription for Zolpidem. (AR 491.)

**B. ALJ's Decision**

As noted above, the ALJ determined that, from the alleged onset date of February 6, 2012 through the January 14, 2015 date of decision, Plaintiff did not suffer from a severe medically determinable impairment of rib or bone fractures (AR 12 (finding Plaintiff's only severe impairments were "muscle strain/sprain, alleged back pain, and mild obesity") and could perform medium work as follows:

> [Plaintiff] can lift and/or carry fifty pounds occasionally, twenty-five pounds frequently; . . . can sit, stand, or walk for six hours out [of] an eight-hour workday; . . . can occasionally climb ladders, ropes or scaffolds; . . . can frequently climb stairs, bend, balance, kneel, stoop crouch, and crawl.

(AR 15).

In reaching these conclusions, the ALJ mentioned but did not discuss Dr. Gibson's diagnosis of rib fractures (AR 18) and gave "little weight" to Dr. Gibson's opinion that, due to his fractured ribs, Plaintiff was unable to return to his job as a dump truck driver. (AR 22.) Specifically, the ALJ described Dr. Gibson's opinions as "conclusory," "inadequately supported by clinical findings," and opinions on an issue reserved to the Commissioner. (AR 22.) The ALJ also noted that Dr. Gibson did not assess any specific functional limitations and she stated that "it is unclear whether Dr. Gibson opined that [Plaintiff] could

not work due [Plaintiff] informing him that his employer did not have any light work available." (AR 22.)

### C. Applicable Law

The opinion of a treating source is generally entitled to greater weight than the opinion of doctors who do not treat the claimant because treating sources are "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also* 20 C.F.R. § 404.1527(c)(2). To reject an uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). If, however, the treating physician's opinion is contradicted by another medical source, the ALJ must consider the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to accord it. These factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician, the "[n]ature and extent of the treatment relationship" between the patient and the treating physician, the "[s]upportability" of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole. The ALJ must articulate "specific and legitimate reasons that are supported by substantial evidence" to reject the contradicted opinions of a treating physician. *Ghanim*, 763 F.3d at 1161.

A medical source's opinion that a claimant is disabled or unable to work are not entitled to "special significance" because they are "opinions on issues reserved to the Commissioner." 20 C.F.R. § 404.1527. Further, an ALJ may properly reject a treating physician's conclusions that do not "mesh" with the treating physician's objective data or history, *see, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Rollins v.*

*Massanari*, 261 F.3d 853, 856 (9th Cir. 2001), and need not accept the opinion of any physician if that opinion is "conclusory and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("discrepancy" between treating physician's assessment and clinical notes is a clear and convincing reason for not relying on the doctor's opinion). However, "[w]hen there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence" in a disability benefits case, the ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation marks and citation omitted).

**D. Discussion**

The ALJ failed to articulate specific and legitimate reasons supported by substantial evidence in the record for discounting Dr. Gibson's opinions. Although Dr. Gibson's opinions that Plaintiff was totally disabled (AR 512) and needed to remain off of work until his ribs heal (AR 508) are not controlling, *see,* 20 C.F.R. § 404.1527, Dr. Gibson's assessment that "there is no light duty work, so until we we got some progress to see if the ribs would heal, I think it is appropriate that he be off of work" indicates that Dr. Gibson believed Plaintiff had some functional limitations due to his fractured ribs. Nevertheless, the ALJ rejected this assessment because Dr. Gibson did not specify Plaintiff's functional limitations and it was "unclear whether Dr. Gibson opined that [Plaintiff] could not work due to [Plaintiff] informing him that his employer did not have any light work available," the ALJ rejected Dr. Gibson's assessment. (AR 22.)

As stated above, "[w]hen there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence," the ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are

considered." *Tonapetyan*, 242 F.3d at 1150 (internal quotation marks and citation omitted). Here, the ALJ conceded that the basis for and precise contours of Dr. Gibson's March 21, 2012 opinion that Plaintiff should stay off of work while his ribs heal was "unclear." (AR 22.) This finding that Dr. Gibson's opinion was ambiguous and inadequate to permit a proper evaluation of the evidence triggered the ALJ's to recontact Dr. Gibson's office for clarification and further development of the record. The ALJ erred in failing to do so.

The ALJ's other reason for discounting Dr. Gibson's opinions is that they were "conclusory" and "inadequately supported by clinical findings." (AR 22.) However, substantial evidence in the record does not support this characterization of Dr. Gibson's opinions. To the contrary, Dr. Gibson's treatment notes reveal that he based his diagnosis, recommended course of treatment, and medical opinions on x-rays (*see, e.g.*, AR 506 (May 8, 2012 – x-ray showed fluid in the right lung field and elevated diaphragm on the right side), 512 (February 27, 2012 – x-ray of thoracic spine show four disks have developed a considerable amount of bone formation)) and a film of the thoracic spine (*see, e.g.*, AR 512 (February 27, 2012 – film of the thoracic spine showed two rib fractures that have not healed)). Based on these images, his conversations with Plaintiff, and his physical examinations, Dr. Gibson diagnosed two fractured ribs at the start of treatment (AR 512 (February 27, 2012)) – one of which remained broken a full year after treatment began (AR 492 (February 20, 2013)). Dr. Gibson also observed that Plaintiff was "clinically short of breath" (AR 506 (May 8, 2012)) and prescribed three highly addictive prescription pain medications to address Plaintiff's constant pain from his unhealed ribs (AR 491). In light of these extensive clinical findings, substantial evidence does not support the ALJ's characterization of Dr. Gibson's opinions regarding Plaintiff's diagnosis and inability to return to work as a dump truck driver as conclusory and inadequately supported.

Finally, Defendant argues that the ALJ properly assigned little weight to Dr. Gibson's opinion because the Agreed Medical Examiner for Plaintiff's workers' compensation claim,

Edward J. O'Neill, M.D., a Diplomate of the American Board of Preventative Medicine, concluded in August 2012 that Plaintiff had "recovered" from his chest wall injuries and chest surgery and "does not have residual impairment or disability." (Joint Stip. at 13-14; AR 431.) The ALJ, however, did not cite Dr. O'Neill's opinion as one of her reasons for discounting Dr. Gibson's opinion (*see generally* AR 22), and the Court declines to affirm the ALJ's decision based on grounds on which the ALJ did not rely. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). Furthermore, Dr. O'Neill did not review Dr. Gibson's records – or indeed *any* records reflecting treatment after Plaintiff's alleged onset date – and, therefore, Dr. O'Neill's conclusion was not an informed rejection of Dr. Gibson's assessment. (*See generally* AR 432-36 (listing the medical records Dr. O'Neill reviewed in reaching his conclusion).)

The Court acknowledges that Defendant may be correct that, to the extent Plaintiff's severe impairments rendered him unable to work on the alleged onset date of February 6, 2012, his impairments were not disabling for a full year and thus Plaintiff was not under a disability, as that term is defined in the Social Security Act. (*See* Joint Stip. at 15.) However, the record before the Court does not support the conclusion that the ALJ's error in failing to fully develop the record was "inconsequential to the ultimate nondisability determination" or that, despite the legal error, "the agency's path may reasonably be discerned." *See Brown-Hunter*, 806 F.3d at 492. Instead, it is also possible that a more fully developed record will support an award of benefits for either an open or a closed period of disability. Accordingly, the matter must be remanded for further development of the record and consideration of Dr. Gibson's opinion. On remand, the ALJ must articulate specific and legitimate reasons supported by substantial evidence *and* "fully and fairly develop the

record" before discounting the opinion and diagnosis of the orthopedist with whom Plaintiff had a year-long treatment relationship.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: May 4, 2017

                                                        /s/ Karen L. Stevenson
                                                       KAREN L. STEVENSON
                                                       UNITED STATES MAGISTRATE JUDGE